It sounded like they were coming in. It sounded like they were coming in. It sounded like they were coming in.   It sounded like they were coming in. Good morning, ladies and gentlemen. Before we start today's arguments, I'll just say for the record that Judge Rovner is with us. You can't see her right there, but she's on the screen, and you will see her, and she will be participating. You might want to make sure that the sound system catches up with everything that is said. So with that in mind, we will turn to our first case for today, Hope against the Commissioner of Indiana, Department of Corrections. Mr. Holler. May it please the Court. There's no question that as a matter of Indiana statutory and constitutional law, the plaintiffs are subject to Indiana's sex offender registry law. The state's registry law provides two independently sufficient reasons why the plaintiffs must register. One, they have each been convicted of an Indiana registrable offense or a substantially equivalent out-of-state offense, and two, they have each been required to register in another state. And the Indiana Constitution allows the state to apply its registry law to the plaintiffs because the Indiana Supreme Court has held that it is not punitive to apply the law to someone whom another state has already required to register. So there are so many things in this case. I hope we have enough time to reach them, but I wanted to start with kind of a basic proposition. We know from Smith against Doe that we've got to analyze each state's law on its own, you know, just because one state may have a compliant law, such as Alaska did, in that case doesn't tell us anything about the particulars of another state's law. And I'm a little concerned at the idea that if Indiana is not violating any constitutional principle for person number one, then it automatically isn't violating any constitutional principle for person number two. So in other words, if Indiana's regime, as construed by the Indiana Supreme Court, can't be applied to certain Indiana people, then okay, so far so good. Indiana can do that any way it wants to do it. But I find that uniquely unhelpful in whether what Indiana is doing in a different way to other people is or is not constitutional. And I'm particularly thinking of the ex post facto argument that the Sixth Circuit found persuasive with respect to the Michigan regime. I don't see that many differences between the Michigan law and your law. And so I'd appreciate it maybe if you could turn to that since we've got the two questions, the retroactivity and the punitive nature. Sure, Your Honor. All right. So with respect to the ex post facto clause issue, this Court's decisions in Leach and Vasquez squarely foreclose the plaintiff's ex post facto clause challenge. But here's the problem. I would like you to address this at a more general level because both Vasquez and Leach jumped to the conclusion that because Smith said the Alaska law was okay, ergo any other law was okay. But let me give you a hypothetical. And I know this is not Indiana's law. But suppose Indiana became concerned enough about people in the description of the former sex offense that it decided to amend its SORA to say that every person with that kind of record must report to the local jail on Friday at 5 o'clock and stay in the local jail until Monday at 8 o'clock in the morning. Well, that's not in the Alaska law, right? And we would need to see that. And that would certainly appear to me to be a punitive measure. So we need to look at the specifics. And perhaps Vasquez and Leach did not do so. I think there are two things on that, Your Honor. So with respect to the retroactivity question, I don't think there's any reason that the specifics of the law will make a difference one way or the other. Well, you concede that this is retroactive. It applies to people who committed their offenses long before Indiana was dreaming of SORA. The state does not concede that, Your Honor. Leach and Vasquez clearly say that the laws at issue in those cases were not retroactive. Vasquez says explicitly Leach is controlling on the retroactivity question, and it gave two independent grounds for rejecting the Ex Post Facto Clause challenge in that case. One was on retroactivity, and then one was on punitiveness. Does the language in Smith impact that at all, or is your argument that the Supreme Court in Smith just assumed that it was retroactive and really focused on the punitive nature? That's exactly right. Because in one sentence it says, not punitive, even though retroactive. That's exactly right, Your Honor. I think it's fair to say that the Supreme Court in Smith assumed that Alaska's law was retroactive, but that decision isn't binding on this Court because it was dicta. And does it matter to pick up on what Judge Wood was asking on the retroactivity prong? And Leach and Vasquez both dealt with different laws. Vasquez dealt with Illinois' law, Leach dealt with the federal law, and they said it was not retroactive. Either of those were retroactive. But Indiana's law is different. Does that matter for the retroactivity analysis, and why not if it doesn't? It's hard to see how it would matter for the retroactivity analysis. The crucial point that the Court and Vasquez identified was that any punishment going forward is simply due to the failure to register. And that only applies prospectively. And that's the case with all of these statutes. I'm sorry. Judge Robert has a question. If a pre-SORA offender moved to Indiana from a state where he was not required to register, would they still be required to register in Indiana this offense? No, Your Honor. Well, if the offense was substantially equivalent, they would. No, they would not. Let me finish. Wait. May I finish my question? If his offense was substantially equivalent to a registrable offense under Indiana law? No, they would not, Your Honor. As a matter of statutory law, the substantially equivalent offense provision would trigger the registration requirement. However, under the Indiana Supreme Court's interpretation of the state's ex post facto clause, the state would be prohibited as a matter of state constitutional law from applying its registry law to such a plaintiff because the clear implication of the Indiana Supreme Court's decision in Zerbe is if someone has never been required to register before, such as Wallace, then the state cannot apply its law retroactively to such an individual. So that's the clear implication of the Indiana Supreme Court's decisions in Wallace, Tyson, Zerbe, and Ammons. So such an individual would not be required to register. Is that the way Indiana enforces it? Because it almost seems, based on the record here and the suggestions here, and I know below the state didn't really contest anything in the record, that they apply it even though it only falls into the first prong, that it is substantially equivalent. It's a pre-SORA, pre-2006 offense. Somebody lives outside of Indiana and then moves in. Even though they're not required to register in the state where they moved from, they may still be required because of that first prong, substantial equivalency. Is it applied that way even though you're saying it shouldn't be? So, Your Honor, a couple things there. One, the state's not aware of any situation where this has come up concretely. And two, with respect to the record, the distinguishing between the state's statutory issues and the state constitutional issues has always been confused here. Yes. And the statements that the state official made in the deposition were strictly with respect to the statutory issues. And that's true. As a matter of statutory law, someone who has never been required to register but has a substantially equivalent offense would be required to register as a matter of the statute. So that's Mr. Snyder, right? That's right, as a matter of the statute. And you're requiring Mr. Snyder to register. But Mr. Snyder would be required to register. He does not receive the benefit of the Wallace Rule because he was required to register in Michigan and would still be required to register in Michigan. And if I can, just append a little note there to preempt a question that Your Honors may have about Snyder, the Sixth Circuit case. It's important to note that Snyder did not say that Michigan's sex offender registry law could not be applied retroactively, period. The registry law is still applied retroactively in Michigan and the other states in the Sixth Circuit. It simply said that two parts of the registry law could not be applied retroactively. One, the restrictions on residency, and then two, the requirement that the information be updated immediately. Those were two provisions of the law that were at issue in that case. And the Court made very clear that those were the only two provisions that couldn't be applied retroactively. I don't see that so clear. I mean, I'm looking at the Michigan case right now. But what I'm very concerned about here is that I want to go back and disentangle, which we, again, probably erroneously conflated, the impact of a particular registration regime on the person based on his or her prior offense and the fact that you have to register. So let me give you another hypothetical that's kind of, again, extreme. Suppose, in the interest of advancing good parenthood, a local school district decides that anybody who fails to show up for a parent-teacher conference has to register with the local police because they're obviously not taking enough interest in their child's education. Well, maybe we would think that was an okay registration requirement. Maybe we wouldn't. But it wouldn't be punishment for some underlying offense. It's just you didn't show up for the parent-teacher conference. And I think, unlike what happened in Leach and Vasquez, these registration requirements do not float around unconnected to anything. The whole question the Supreme Court said we're supposed to attend to in Smith is whether these SORA-like regimes inflict additional punishment on somebody for the underlying offense that put them on the registry. I don't even want to say sex offense because, in some instances, as in one of the instances in the Sixth Circuit case, it wasn't even a sex offense. But anyways, the defined offenses. And I really think that's what we need to focus on. We need to focus on is that retroactively reaching back to impose a burden on somebody that goes beyond regulatory and is punitive for something they did long before the law was passed. So two things on that, Your Honor. First of all, Indiana's sex offender registry law operates in exactly the same way as the Illinois law  So it operates the same way. There are different details, which I'll get into in a moment, but it operates the same way. Well, just to save your time, I agree with you completely that the difference between 500 feet and 1,000 feet is certainly nothing of constitutional magnitude, so I'm not worried about that. So the other difference is that the district court identified a handful. One is that Indiana distinguishes among different offenders and labels them rather 1, 2, 3, like the federal system, but serious violent predators and offenders against children and that sort of thing. And the district court thought that those sorts of labels were shaming. But I want you to compare. I mean, you're here for the Indiana law, never mind the Illinois law. I want you to compare the Indiana law to the law that Alaska had that the Supreme Court was reviewing in Smith. Here I see big differences, since in Indiana, as is the case in many states now, people can't live places, people can't participate in their children's lives, people can't work places, people can't take public transportation through certain neighborhoods. These are big restrictions, and they look a lot to me like the restrictions on somebody who's under supervised release or probation or parole. There are a couple things I'd like to say about that, Your Honor. First of all, of course, it's very similar to the law that this court upheld, the Illinois law that this court upheld in Leach. I'm asking you not to focus on that. But even beyond that, the residency restriction provisions are not actually part of the registry system. They're separately codified in the state's criminal code and are not enforced by the Department of Correction. They're enforced by local county sheriff's offices and local district attorneys. Boy, that's cold comfort for somebody who's subject to them. And lastly, and perhaps most importantly, the residency requirement, the 1,000-feet rule, is in fact not retroactive as a matter of the statute. Indiana Court of Appeals pointed that out in a case called Cundiff v. State in 2012. So it doesn't apply to these plaintiffs in the first place. You know, you argued in the brief that, well, you only argued that the registration system passes the rational basis test. If we should find that the system implicates the right to travel, would you then concede that the system cannot survive strict scrutiny? Yes, Your Honor, yes. We haven't made an argument that the rule that the Indiana Supreme Court has articulated passes strict scrutiny. We've simply pointed out that the rule doesn't implicate the Privileges or Immunities Clause at all. And it's hard to see how it would. The Privileges or Immunities Clause, as the plaintiffs concede, merely prohibits states from imposing durational residency requirements, that is, discriminating between new residents and old residents. I understand your argument here is that the rule was not designed to discriminate between current residents and those moving into the state. But I think you'd have to agree that the effect is that they're treated differently. How does that impact the analysis? Well, I think it's crucial to see, Your Honor, that we can't evaluate a claim under the Privileges or Immunities Clause by merely looking at how it affects one individual. Because there's no question that if the state applied the sex offender registry to everyone, if Wallace didn't exist, that it wouldn't violate the Privileges or Immunities Clause. So the crucial question is whether the rule distinguishes between new residents and old ones. And it doesn't. And there are two easy ways to see how this is the case. So first, the state, the rule the Indiana Supreme Court has articulated would allow the state to apply its registry law to a longtime Hoosier, someone who has always resided in the state, but whose out-of-state travel triggers, for example, Illinois' registration requirement. It would allow the state to apply its registry law to someone like that. And it would not allow the state to apply its registry law to someone who just got to Indiana from Alaska and who was never required to register. So crucially, the rule doesn't turn. This is still your concession that somehow Mr. Snyder is, apart from some Michigan, that the substantial equivalency is not enough by itself to require registration? So I want to clarify, Your Honor. As a matter of the statute, the substantial equivalency is enough. But then we always have to ask, does the state ex post facto clause nevertheless prohibit the state from applying the registry law to you? And if you are an offender who has never been required to register, someone like Wallace, for example, then the Indiana Supreme Court says we can't apply the registry law to you. And the crucial point for Mr. Snyder is he was required to register in Michigan, and therefore, as a matter of state constitutional law, the state can apply its registry law to him. I want to go back to the level of scrutiny, if I could, please. If rational basis scrutiny applies, as you have advocated for, when you say we're looking at the equal protection and rational basis applies, you have argued that because the state has a rational basis for imposing this, namely the safety of its citizens, that that's the end of the inquiry. But there's case law out there, including FCC versus Beach Communications, that says when we're dealing with classifications, there has to be a rational basis for the classification itself, as opposed to the rule as a whole. How do you address that, and what would the rational basis for a classification here be? So two things, Your Honor. The Supreme Court, in addition to saying that you have to have a rational basis for the classification, also says a state can prohibit something, and it doesn't have to go all the way. And under inclusive law, it doesn't violate rational basis. But that doesn't justify irrational classifications. The state can't say, well, we're going to start with the African Americans and then move on to the whites. Well, that sort of classification would implicate strict scrutiny. Of course, but I'm just saying it shows that you can't use that kind of a one-step-at-a-time approach. Well, that's right. The classification has to be valid. Right, that's right, Your Honor. And sometimes the state has to draw a line somewhere. And here, the reason that the classification is not irrational is the Indiana Supreme Court has concluded that it's going to interpret its state ex post facto clause a little bit more broadly than the Supreme Court did. Look, the registration requirements are onerous. And they impose a significant burden, it seems to me, on anyone who is subjected to them. To impose it only on those who elect to move into Indiana when it wouldn't be imposed for the same conduct on other Indiana citizens seems to me to be a violation of the fundamental right to travel, just as the imposition of lower welfare benefits on those moving from a state with lower benefits is a violation of the right. And I am really having a lot of difficulty with the argument. Well, Your Honor, I think it's crucial that if that were the rule, then it very arguably would violate the Privileges or Immunities Clause. But that is not the rule. Whether or not an offender is able to take advantage of the Wallace Rule doesn't turn on whether they have recently moved to Indiana. It doesn't turn on that. It turns on whether they've been previously required to register in another state. And they may have always lived in Indiana for their entire life and still be required to register because they work in Illinois and Illinois requires them to register. Or, on the other hand, they may have recently moved from Alaska and Alaska didn't require them to register. And they wouldn't be required to register. And that shows that the rule doesn't turn on how recently you moved to Indiana, how long you've been a resident. And the plaintiffs agree that's all the Privileges or Immunities Clause prohibits. Can I go back to the classification question? Just so you can finish your answer, if you would, please, under a rational basis review, how does the classification aspect fit in? And if you do have to justify it based on the classification, I don't really see that argument coming forward. So if you could explain that, please. Yes, absolutely, Your Honor. So to close up, the Indiana Supreme Court has said, we're going to take our law a little bit, or our ex post facto jurisprudence, a little bit farther. And it said, however, we are going to conclude that a law is punitive only if the marginal effect of applying the law amounts to being punitive. And for someone like Wallace, who's never been required to register, the Indiana Supreme Court says, yeah, that's punitive. But for someone like the plaintiffs in this case, who have been previously required to register, that doesn't quite add up to being punitive. And so that's the difference. Someone who's been required to register before, it doesn't quite add up to punitiveness, according to the Indiana Supreme Court. But for someone who has never been required to register, it does. And that's a common sense distinction that the Indiana Supreme Court has drawn. And it clearly passes the minimal requirements of the rational basis. So it sounds like you're saying that the classification would not be residents versus non-residents. You have to look at it from a classification of did you have to register previously versus not register. Absolutely. All right. Thank you. Mr. Rose. Thank you, Your Honor, and may it please the Court. I am somewhat at a loss as to how to begin, as it seems to me that Indiana's position is shifting today away from the position that has staked out throughout the course of this litigation. Both in deposition testimony and in briefing below, Indiana has been perfectly clear that it views the substantial equivalency statute and the other jurisdiction requirement to put forth two independent reasons that it might require someone to register. In fact, in deposition testimony, it was 100% clear that it only applies the other jurisdiction requirement to someone who moves to Indiana after July 1, 2006, the day that that statute went into effect. As we argued in our brief, if that were Indiana's justification, Gary Snyder would have no registration requirement whatsoever. Adam Bash also moved to Indiana before 2006. So I think that the position that the state has staked out today is not the same position that it has articulated below in deposition testimony. It's not the – it's not – And that's what the state has argued is the basis. Mr. Bash had no Kentucky requirement. He did have an Ohio requirement. He did or did not? He did have an Ohio requirement before he moved here. Wouldn't that make him fall under the second prong of the statute, which the state says is an issue? Absolutely not. The state says that we only apply that statute if you came here after a specific date, if you came here after July 1, 2006, which I think is a concession it has to make given the Indiana Constitution's ex post facto holdings. If they came to Indiana before that date, that statute simply did not exist. The DOC's 30B-6 designate was asked in deposition testimony, why does Gary Snyder have to register? He said the substantial equivalency statute period because of when he moved here. I think he even articulated 2003, we don't apply the other jurisdiction requirement. Did the district court make that factual finding at all or rely on that particular statement? I don't recall. Not that I recall. We're obviously here on summary judgment, and it is in the record. It was cited as an undisputed fact, so I think it is what it is. As I say, I think the state has started off on a foot today that is not how this case was litigated. At the same time, I'm not entirely sure that it is a distinction that matters. Certainly not to our ex post facto clause, but not even to our right to travel claim. Before you get any further, maybe this is just so that I can get your two cents on this. As the state began, we have the Leach decision and the Vasquez decision, and I want to know whether it's your fundamental argument that these were maybe overly crude implementations of Smith, that we would need to have a Rule 40E circulation and set them aside insofar as they say, oh, it's just registration or it's the same scheme. Judge, the state has obviously articulated two separate ex post facto arguments, the retroactivity and the punitiveness. The punitive, yeah. With respect to the punitiveness, what we're talking about here is the same type of cumulative burden claim that the Sixth Circuit addressed in Snyder. I do not think it is necessary to revisit any of this court's precedents in order to hold that the- So are you saying that you think there are such material differences between the Illinois regime and the Indiana regime that we could come to a different result? I think that Illinois, that this court in Vasquez dealt with the residency restriction alone. So just a very tight reading is what you would-I guess that's what you're saying. I think the court really did just deal with one aspect of a registration scheme in that case, and I think what Smith recognizes is that one aspect is not necessarily the entire story. We know from Smith that a simple registration and notification scheme is constitutional. That in Leach and Meadows, this court dealt with a similar issue related to the federal SORNA, which is not too distinct from the Alaska statute in Smith. But when you start adding on the residency restrictions and that you can't even attend your children's events at school- That may go to the punitive aspect, which is what I think you're saying. But Leach, which dealt with the federal SORNA, and Vasquez, which dealt with the Illinois registration requirements, also both specifically held that they were not retroactive. So would we have to overrule those decisions in order to find the Indiana statute retroactive? I think that Leach articulated two different types of ex post facto claims. When you look at the question as to was this a crime at the time it was committed, I think that's the first type of retroactivity question that the court dealt with in Leach. It's the same question that this court dealt with in Meadows. I think Leach also recognized a second type of ex post facto claim, which is, is the underlying regulatory requirement itself retroactive and punitive ultimately? I think Leach did not hold that that type of claim is not retroactive. I think Leach held that Smith is dispositive on the punitive question with respect to that claim. We've certainly acknowledged in briefing that Vasquez, at least, has language that appears to indicate that simply applying these registration requirements is not retroactive. That is a difficult decision to square with Smith. It's a difficult decision to square with Buehler. But did Smith directly decide the question? It seems like it was thrown in at the end almost assuming it was retroactive. I didn't see any aspect of the case analyzing whether or not it was retroactive. I think if any of the justices in Smith had thought that the statute was not even retroactive, it would have been a two-sentence decision. Was that an issue that was raised, if you know? Not that I'm aware of, but I think it was assumed by everyone, including the justices. There were four separate decisions in Smith, and not one of them hints at the fact that it might not even be retroactive. But more importantly, it tells us what we all know, which is when we say that these requirements are going to be imposed on you as a result of a conviction that happened before this statute was enacted, that is retroactivity. So we've certainly acknowledged that the language in Vasquez, at least, might be at odds with that position. We've argued that Vasquez can be interpreted as addressing punitiveness, not retroactivity. But as I say, Smith, Mueller, the host of other ex post facto cases that the state itself relies on, I'll either hold or assume that the application of registration requirements is something that implicates ex post facto concerns. So for your ex post facto—go ahead, Judge Rover. You argue in the brief that Indiana asks a single question to determine whether an offender must register. When did that person relocate to Indiana? But how would that account for the person who always lived in Indiana, but is required to register because he works in another state that requires registration? Sure, Judge. Obviously, the third component of the right to travel that the Court recognized in signs has to do specifically with changing residences. To the extent that someone—and none of our six plaintiffs have—to the extent that someone has the other jurisdiction requirement applied to them based on working or attending school out of state rather than changing residences, I don't think it would implicate the third component of the right to travel. The state or a court would have to determine whether another component of the right to travel is implicated in that case. There's also a very clear equal protection issue lurking. I can't imagine a justification for Indiana to require someone to register who works in Cook County but not someone to register who works in Lake County. So I think there are definitely constitutional issues that might arise there. They're not the same constitutional issues that are in this case because the third component of the right to travel really does take effect when you start treating new residents differently than older residents. So let me ask you this. Is it possible, in your view, that maybe some people just don't have a right to travel complaint, such as the type of person Judge Rovner just referred to, someone who lives in Indiana and works in Cook County, Illinois, and they've always done that. Does that take away the right to travel argument for the people who moved from another state? I don't think so, Judge. There are three different things that might require registration. One is where you live. One is where you work. One is where you attend school. So far as we're talking about the where you live people, the where you reside here, if you're going to say that someone who has lived here all along is not required to register but if you move here after a certain date, after either your crime became registrable under the Substantial Equivalent Statute or after the 2006 date, if you had an out-of-state registration requirement, then you really are setting up those two classes of persons. And isn't it the case, I thought you argued in your brief looking at Shapiro against Thompson, if I'm remembering, that there were even some people in California who were getting welfare benefits that were just as generous as the Californians because their prior states had such provisions. So it wasn't 100% of the class, that it would be enough, that it's some people. That is science, but absolutely, Your Honor. And it's easy to view these complex constitutional questions in the abstract. But Brian Hope, if he had never left Indiana after his conviction, would not be required to register. He moves to California and then to Texas and then back to Indiana to care for an ill family member. And as a result of that, he is required to register. It is very difficult to hear the state saying that this is not something that implicates the right to travel. If the state were simply able to say, we're relying on the other jurisdiction requirement, you're out-of-state registration, that's why we require you to register, I don't think there's a practical effect. Every state in the nation now has a sex offender registration. So saying that we're simply applying that standard, I don't think that says anything about whether you have been treated differently than long-time Hoosiers as a result of your interstate movement. And that ultimately is what this case is about. The state has created two classes of persons. Certainly, it's a result of a combination of Indiana constitutional and Indiana statutory law. But it has created two classes of persons, and only one of them needs to register. And the people that need to register are the people who came to Indiana after a certain date. Science tells us that in and of itself triggers strict scrutiny. The state has not for one second suggested that it meets that standard. And ultimately, I think this case really is that simple. Some of the case law, in talking about the right to travel, some of the Supreme Court cases discuss that there must be a durational requirement. How should, and the law is not necessarily consistent on what that means. How should that be construed? And is it your argument that durational requirement doesn't mean you have to spend a certain amount of time that you could be a new resident? Or is your argument that the new resident would fall in durational, even if we define it how some courts have traditionally? The durational residency cases, Dunn, Shapiro, Sines, all came to fruition because states had passed a statute that said, that tried to find an objective measure of establishing bona fide residency. After you're here a year, we'll consider you a resident. And therefore, you get these benefits. Other cases, Hooper, Zobel, Soto-Lopez, are less clear, and there's less of a durational residency requirement. But those were all prior to science, weren't they? That's true. But this is a durational residency case. The difference between this case and Sines and the other durational residency cases is that Indiana never lets persons establish bona fide residency. You're required to register for the rest of your life. This is a durational residency case, but the duration is permanent. So what we said in our briefing, and I'll reiterate here, is that what Sines doesn't let the state do temporarily, the state definitely cannot do permanently. And that is what Indiana has done here. So I wonder if we could turn back for a minute to the ex post facto argument. And in particular, we've discussed retroactivity to some degree, but I'd like to discuss whether, taken as a whole, the Indiana SORA amounts to punishment, because there's a lot of discussion about that in Justice Kennedy's opinion, in Smith, and part of that is just, oh, so you have to register. Anybody who had the time and energy could go and find out that you were, in fact, someone convicted of whatever the offense is. Sure, Judge, and obviously we've briefed the Mendoza-Martinez factors, or at least the ones that the Supreme Court deemed relevant in Smith. Obviously Smith says that a simple registration and notification scheme is not punitive. And Smith also says at one point, I'm not going to be able to see the page right away, but the analogy was drawn for the court in Smith between the burdens of these registration procedures and the normal burdens that go along with supervised release or parole or that sort of status. And the court was not persuaded in Smith that the burdens of registration rose to the level of these criminal provisions. Sure, and there's a difference, I think, between saying that something rises to the level, obviously registrants are not locked up, they're not being sent to jail. Well, neither are people on supervised release. Of course, but at the same time, I think that whether this equates to something and whether it falls in the same category or similar to are two different questions that given that what we're talking about is more or less a balancing test, I think the closer we get, the heavier it tilts in one direction. Certainly Smith was not dealing with the in-person registration requirement. That is clear from Snyder. And failing to show up in person would yield criminal penalties? Absolutely. That's how you register in Indiana. And we have evidence in the record saying that that in and of itself is an ordeal, having to find a friend to give you a ride six or seven miles. Brian Hope has to walk every week waiting in line for 40 minutes. One of our plaintiffs has to take an entire day off of work to do that and that alone. When you add that on to the residency restrictions that were not at issue in Smith and the not able to enter school property provisions, which is very— You have to notify persons. There's notification requirements for some persons, including all six of our plaintiffs. Those aren't in person, are they? Those particular notifications if you want to leave? Not that I'm aware of. I will admit that I am not aware. But when you add all of these together, you end up with a case that, again, is very similar to Snyder. And I think that case really sets the roadmap for what happens when you start piling on and piling on and piling on. And it doesn't take quite clearly one thing that is not punitive in and of itself. When you add that on to requirements X, Y, and Z, at some point the balance tips. And I think that's very much where we are so far as registration requirements are concerned at this point. Thank you very much. Thank you very much, Mr. Rose. Your time had expired, Mr. Hudson, but if you can't live without one last minute, I will give that to you. Thank you, Your Honor. I think it's crucial to see in this case the distinction between the statutory requirements under Indiana law and the constitutional requirements. The 30B6 witness that my friend mentioned, all of his discussion were about the statutory requirements, and everything he said there were entirely accurate. But the constitutional question is separate, and it's our understanding that the plaintiff's privileges or immunities clause claim is about the constitutional rule the Indiana Supreme Court has articulated. How do you respond to the argument that you've shifted your position on this throughout the litigation? That's simply not true, Your Honor. The state's position throughout the litigation has been the privileges or immunities clause doesn't apply because the Indiana Supreme Court's rule does not discriminate on the basis of residency. That was the position we took below. That's the position we've taken in this court. And the party's only dispute, I think, on the privileges or immunities clause issue is exactly what is the rule the Indiana Supreme Court has articulated. Okay, you're going to have to wrap up. Yes, thank you, Your Honor. All right, thank you very much. Thanks to both counsel. We will take this case under advisement.